terrific then I'll call the case of Benjamin Dubay vs. Stephen King Mr. Cook. Yes, this is Mr. Cook. All right, we're ready to hear from me. Thank you. May it please the court, counsel, on behalf of Mr. Dubay and myself, I'd like to thank the court and administrative staff for assisting in the technological challenges to presenting this virtual argument. We give them a lot of practice. But we think they're terrific. So thank you for thanking them. Yes. Thank you. If any time someone can't hear me, please let me know. The Roach, the man who time forgot, aka Rest in Dane, is the character created by Bud Lewis and Bill Dubay at the Cartoon Factory in 1976. This is the character which my client, Ben Dubay, requests this court's protection from copyright infringement. For the purposes of this appeal, it is uncontested that Mr. Dubay holds about copyright for Rest in Dane. And conspiring all inferences in my client's favor, Mr. King had access to the work. Although notably, Mr. King denied reviewing Warren Comics in the mid to late 70s until his deposition, we showed him a copy of a book that he wrote, Don's Macabre, where he actually cites to and writes about this extensive Warren Comics, who was the publisher of Eerie, where the work first 8 million copies of comics from January 1977 through 1983. The issue before this court is whether or not Mr. King's character, Roland Deschain, is substantially similar in quantity or quality to our character, Rest in Dane. This is certainly similar in quantity, right? One to one? So what do you mean by quantity? Well, in quantity would be simply the number of similarities, as opposed to quality, which would be the... Mr. Cook, you say that it is that Stephen King had access to the comic book series, but let me just push back on that a little bit. Because Stephen King has admitted, has said he stopped reading Eerie before 1977. He never had access to the Rook comic book series. You've pointed out that he admitted to having acquired a copy of either Eerie or Creepy on one occasion in 78. But what evidence is there that the copy, that copy contained a story from the Rook series? Well, Your Honor, in addition to the widely disseminated arguments that we maintain, as far as access, he didn't just have, he actually, in his book, Danse Macabre, he actually wrote not an entire chapter, but a good section of the chapter about the black and white comics of the time. In addition to that, he was actually teaching a class at the University of Maine on similar topics. So we feel that access, there is certainly sufficient evidence of access, which was not, there was no finding of no access in the district court opinion. The district courts decided this case solely on substantial similarity. If I may proceed, Your Honor. Thank you. Please. So, in comparing substantial similarity, there's a Ninth Circuit case, which I realize isn't binding, but it is useful, I think, for this court's consideration, and that's the D.C. Comics v. Cowell case, the Batmobile case. And when considering substantial similarity in regards to character, characters, there are three factors that they laid out that I think are useful. First, the character must generally have physical as well as conceptual quality. Second, the character must be sufficiently delineated to be recognizable as the same character wherever it appears, or he appears, or she appears. And third, the character must be especially distinctive and contain some unique elements of expression. Notably, the main error that the district court made in this case, in Judge Schlesinger's own opinion, is that the district court never made an analysis of whether or not Reston-Dane was sufficiently delineated, which should have been the first step. Because if the district court doesn't consider what is sufficiently delineated, there's no data points to say, okay, this is what is going to be compared to the alleged infringing work. And since the district court never made that initial determination, as in her own opinion, page 29 in the footnote, the rest of the process was doomed to fail in the analysis of the comparison of these two characters. Now, the appellee's experts do concede, in certain circumstances, that Reston-Dane alone may be protectable by copyright law. But they maintain that Rowland is not substantially similar in protectable expression to Reston, because these few features that are distinctively delineated in Reston are not part of Rowland. An abstraction of the sufficiently delineated elements at the heart of the character of Reston-Dane, which the district court did not engage in, but if this court does engage in, will reveal that Reston-Dane has a name certain and an alias, Reston-Dane, aka the Rook. He has a distinctive home, a towering castle, Rook Castle. This is one manner in which his knightly feel is expressed. He dresses like a gunslinger, reminiscent of old Westerns, but he is not a gunslinger. He is actually a diplomat, like his father before him. At one point, he takes the personality of his black bird and prey, the Rook, which is not like a crow, as indicated in some of the documents. A Rook is much different than a crow. But he takes the personality of his black bird and prey, and in his introductory story, his black bird and prey actually goes into battle with him. He is a time traveler. And this type of time travel, the space-time continuum, is expressed as being controlled from the castle tower, which he consistently is trying to return to, often is prevented from getting to, and never allowed to remain at. Mr. Cook, can I ask you a question? Before we get too far down the line, I mean, at their core, at their essence, though, aren't your character and Mr. King's character pretty different? I mean, your character, you say that he's not really a gunslinger, he's a good guy. Mr. King's character does some really raunchy stuff, you know, sexual assault with a, with a gun. You know, it just seems to me at their essence, they're pretty different people. Well, the, the, the initial character in sort of the original gunslinger novel was comprised of five chapters. And the first chapter, which was also titled The Gunslinger, Roland Deschain, Mr. King's character, is significantly different from Reston Dayne. But what happens is, when chapter two is written and comes out, there's a drastic change, and this is even acknowledged by Robin Firth, there's a drastic change in Roland Deschain. So you can't really compare, let me put it like this, if, if it was just chapter one, this case would not be here, because Roland Deschain was a different character. Roland Deschain was not a time traveler in chapter one. It's in chapter two, starting in the way station, where you see the transformation, that is where, that is where the infringement occurs, because the traits of Reston Dayne. So I think you have to look at the before, the before and after. And if you compare the original chapter, I would agree with you on it, but that's not what we're comparing, that's not what we're alleging. May I proceed? You may. Thank you. So one of the cases that is a leading case for the 11th Circuit is the Levy-Warner Brothers case, which I'm confident the court is familiar with. In that case, it was the picture of the bird girl, and the bird girl was extracted. And in that case, the court did, in fact, go through the abstraction process to say, what is, what are the unique elements of this piece of art or this photograph that may warrant protection? In that case, the court found that it was the positioning of the statue in the of the picture. It was the angle, the lighting. The picture was taken from a low angle. Well, lighting, angle, the position, these are all ideas. But in Levy-Warner Brothers, these ideas combine into a unique expression of this photograph of this statue. The statue was in the public domain. The same concept applies here. The district court gets, and I did provide some I don't think I have time to get to them, but if you look at the exhibits that I provided, the charts, the court, the district court made the assessment of this case at the lower levels. In other words, they broke it down to the ideas and said, well, these are all just ideas, and therefore there's no infringement. Where really, the proper analysis is to start at the top. What is the sufficiently delineated expression of this character? You do that by comparing what are his expressions. And so the analysis should go from the top down on the charts that I provided to the court and counsel. Recently, in the Compulife case, this court held that protectability consists of the absence of proving unprotectability. Appellees have provided no prior art or character with the same combination of unique traits as Rest and Dain. Now, at the district court level, the reason that you have to first isolate what is the protectable expression is because if you don't do that, which the district court states they did not do, and you don't know what, it doesn't even give defendants an opportunity to say what prior art they should be looking for, because once the plaintiff or the person seeking protection says, hey, here's our protectable expression. It's equal. It's the same elements combined in this unique way. Then the defendant doesn't have to produce the entirety of history. They have to say, okay, here's prior art. You say these are the unique things, the unique way they're combined. At that point, the defendant can go show prior art. They have not done that in this case because none exist. Roland is the second comment. The black bird of prey is a very unique thing, combined with the time traveler. Even defendants expert Bob Gale admitted this, but yet the district court broke this down and said, well, the district court actually admitted the birds are similar. The characters look similar. Arizona or the Old West is basically mid-world. And unfortunately, I'm out of time. We saved some time for rebuttal. So we'll hear from you again. Okay, thank you. Is Vincent Cox with us? Yes. Can you hear me? I can. Yeah. Your Honors, my name is Vincent Cox and I represent six defendants. The author, Stephen King, and his publisher, Simon & Schuster. Marvel Entertainment, which published the graphic novels that were based upon the Dark Tower saga. And then three defendants who were involved in the production and distribution of a theatrical motion picture called The Dark Tower, based upon the book. So today, Your client, Marvel, does a lot of filming around our courthouse, so we know them. For better or for worse. Well, the crucial flaw in the plaintiff's analysis is the emphasis upon protectability in a way that turns it into a red herring. Protectability of graphic characters is, in a way, a much simpler analysis than fictional characters. Graphic characters can be What we're dealing with here are characters that are built up as fictional characters over a period of time and with an accumulation of characteristics that, in order to be protectable, need to be distinctively delineated. Now we do have A great deal of delineation of Roland Deschain over the course of 32 years in which Stephen King wrote the seven novels and a novella. You need, though, not to divorce protectability from the infringement analysis. When you look at, when you turn to infringement, you look at the elements that were distinctively delineated as the ones that could be infringed. To take an example, if you had James Bond and you look at whether or not he's distinctively delineated, the things that distinctively delineate him are his Aston Martin, his particular weapon, his license to kill, his debonair good looks. The things that that delineate him are the things that are protectable. You don't consider, oh, he's protectable and now let's look at similarities to some other detective or some other secret agent, be it George Smiley or Matt Helm or whatever other character you might have. And Mr. Cox, over the years I've come to think about these things in terms of somebody's got to write this and I just had a question. For how you would answer this question to make sure it's that I'm understanding it correctly. So can you just tell me what parts of Roland's character, Mr. King had created by 1977? Yes. So, Roland Deschenes was someone who was on a quest for the tower. He was somebody who was chasing the black. He was, there was a man in black that he, the first the first sentence of the first book is the man in black fled across the desert and the gunslinger pursued him. That, in fact, is the last the last sentence of the last book. The notion of him as a having tremendous skills as a gunslinger, the fact that he has used a bird to to win his his contest with his instructor that he needed to in order to become a gunslinger. There were, I know in the brief we've listed quite a few of those things. And so they're they're basically the character as a a man in in the throes of a quest that he can't control. We're all there and all those elements were there. He, his tortured self, all of those things were there from the outset. And what we what we had here in this case was the problem of presenting to the court, the totality of the character and the character's development. So all of the essentially all of the elements that are in the first book and that are in Robin Firth's summation of the character arc in the first book. Those, those character elements were created before 1977. They're contained in the University of Maine Folger library manuscript that was typed by Denise Kelly and we had her deposition and she was able to produce a letter from Mr. King acknowledging her work. It's, it's very clear that that Stephen King had created Roland before the time came when when the Rook was ever published. The only thing I would, I would footnote is that the name Deschenes was never given to the character until 1997 in the fourth book and then later when he came to revise the initial book in 2003 he put the name back into it. So just a footnote there. In any case, the, the analysis of character similarity has to look at the distinct the elements of the character that are distinctly developed and here the things that they're pointing to are the most banal elements of the of the characters and even there, they're they're playing word games about what things are similar. For instance, the insistence that Roland is a time traveler. Well, when you read the books, as I have, what Roland is doing is he's going between parallel universes that are not synchronized in time. He doesn't have a time machine as the Rook does, where the Rook will decide to go back to a particular event in time, say the Alamo, and then just direct the machine there. Roland does not understand how it works. The, the travel between these non synchronized universes is magical. He finds this magical door on a beach and goes through it and is suddenly transported into into an airliner in 1989. It's just never really explained how he does that and Roland doesn't understand it. You know, Plaintiff insists that Roland is a future man. Well, the nature of non synchronized universes is that you can't even talk about what's future and what's past. They're just entirely different types of characters. And the other aspect of this that I wanted to bring out because it's hard to to sometimes to see this, the nature of Stephen King's creative process is that the story creates the character. He, the story is the boss. He creates a character and the character does things and in a way the story determines who the character is in in a sense, and in fact, oddly enough, in volume six of the of the books Stephen King, a fictional Stephen King, encounters Roland Deschain and talks with him about the creative process and talks about how I wanted to make you Clint Eastwood, but after what you did in Tull, I couldn't do it anymore. You weren't going to be a fun guy to deal with. And so King creates these things out of the events, the, the whole notion that that somehow you could use that kind of a creative process to lift something from this this series of comic books is just preposterous. Judge Schlesinger did an extraordinarily good job of synthesizing a tremendous amount of information and and distilling plaintiff's contentions as to the similar elements and that's what his opinion does. The, the, the opinion deals with each of plaintiff's contentions and does a very good job of judiciously setting forth the best parts of plaintiff's argument and and seriatim dismissing their significance because they aren't significant. There is Really, character protection is something that needs to be neither overprotective nor underprotective. My clients all have an interest in character protection. We are not saying that characters are not protectable. What we are saying is distinctively delineated characters are protected and the things that are protected are the things that make them distinctive, not just Oh, now you're protected. And now we look at the totality. No, you have to look at the specific element that makes that character who he or she is. And that's the that has to be the way that these kind of analyses are performed. The Are there any particular questions that that the panel has for me because I would, I don't want to wander about You've answered the particular question I had, Mr. Cox. I don't know about my colleagues. Well, I wanted to mention the element in this case of our using summaries, because I think that that was for me as a copyright lawyer. I've never done that before. And I think that it was Necessary here because no court could be expected to read this 4000 page series of books. And so we needed to hire somebody to prepare a reliable summary and the court, the court. Took it into evidence and read it without without objection from the other side and the report that was prepared by our expert Bob Gale does an excellent job of Really parsing what parts of the the plaintiff's character are potentially protectable and also what parts of a role in the Shane are protectable as well. So, If there are no further questions. Thank you, Your Honor. The, the decision of the district court should be affirmed. Thank you, Mr. Cox. Mr. Cook Thank you. Briefly to address some of the issues raised by Mr. Cox, he is now arguing independent creation, which is not the issue that's before this court. Independent creation is hotly contested He mentioned that Denise Kelly allegedly typed this manuscript in 1975 at the University of Maine will Stephanie Leonard Who is Stephen King's sister law testified that she couldn't have done that. So these are all factual disputes independent creation is is a hotly contested factual dispute. The district court didn't even address it as far as a grounds for summary judgment. So, you know, if that's something that you know we address it at a later hearing and we are back in front of the district court, we can certainly do that. The In regards to the the summary of Robin first we we do and always have contested the summary and the accuracy of the summary, not the idea. We didn't object to the idea of using a summary because of the volume of the works, but rather her summary as we detail in our briefs. You can actually help me with that. Mr. Put me. Do you do you challenge was first methodology. Absolutely. In fact, Miss first challenges her own methodology because Miss Miss first states that a close reading, which is the methodology in her purported field of expertise. Requires an unbiased review of the facts. So if her by her own statements, if her methodology requires an unbiased review, but yet her entire professional career is primarily premised upon her work for Stephen King for work on the Marvel. On the Marvel. Call them comics, but the illustrative graphic novels. I guess they're called these days. Her entire career is premised upon Stephen King. Well, it sounds like you're not. I mean, to me, that sounds like you're saying no matter what her methodology was she couldn't have engaged it because she was biased in favor of Mr. King, which is not really a challenge or a methodology. Well, I think it for methodology was something different would be a different scenario, but Robin first is the one that told us what the accepted methodology was Robin first said it requires an unbiased review. So I'm not the one that selected the methodology. I don't contest that that is the accurate methodology, but the reality is that she did not. I mean, she left. She omitted things from her report. For example, she admitted she omitted rather that Earth is with a capital E. It's Earth is Earth and I'm out of time. So